Harold Tessler, J.
This is an article 78 proceeding instituted by petitioner James Rupp, duly nominated candidate of the Courage party for the office of Elector of the President and Vice President of the United States, and petitioner Clifford A. Franklin, the field representative and New York director of the campaign of George C. Wallace for the Presidency of the United States. Petitioners seek an order
“ 1. Directing the respondents to enter into a formal contract, embodying the agreement made between the respondents, the petitioners and The Wallace Campaign for the renting of the William A. Shea Municipal Stadium to The Wallace Campaign on the 9th day of October, 1968; and
“ 2. Directing the respondents to rent the William A. Shea Municipal Stadium to The Wallace Campaign and to the petitioners for October 9, 1968, upon the same terms as were contained in the agreement made orally between the parties; and
‘ ‘ 3. Directing that the respondents rent the said William A. Shea Municipal Stadium to the petitioners and to the Wallace Campaign on October 9, 1968; and
‘ ‘ 4. Granting the petitioners such other and further relief as may be just and equitable ”.
Respondents now move pursuant to CPLR 7804 (subd. [f]) to dismiss the petition for legal insufficiency. The American Civil Liberties Union has appeared amicus curice.
Petitioners allege that they have instituted this proceeding in their own behalf, on behalf of George C. Wallace, the presidential *947 candidate, and on behalf of 43 other candidates for the office of Electors of the presidency and vice presidency of the United States. Petitioners further allege that on or about September 23, 1968 they communicated with the respondent George F. Niebling, who is the director of the William A. Shea Municipal Stadium, and sought to arrange with him a lease of that stadium on behalf of the “ Wallace Campaign ” in order that they might hold a rally in support of the candidacy of George C. Wallace and in order that he might, on the occasion of such rally, make a major statement as a presidential candidate. Petitioners allege on information and belief that thereafter Niebling communicated with August Heckscher, the Commissioner of Parks of the City of New York, and that the Commissioner approved the agreement for the rental of the stadium and that respondent Niebling communicated this approval to the petitioners.
Petitioners further allege that respondent Niebling prepared a formal written agreement for execution by the parties for the rental of the stadium and that the fee agreed upon was $10,000. Petitioners allege that they were and are ready, willing and able to enter into that agreement, but that respondent Heckscher has now stated that the contract could not be executed because the planned rally did not fit into the permitted purposes for which the stadium is maintained. Petitioners draw the court’s attention to the fact that unless a decision is rendered by October 1, 1968 any remedy that might be afforded by the court would be useless since after that date it will be impossible to complete the arrangements that have to be made for Governor Wallace’s appearance and “ it will be almost impossible after that date to make arrangements for Secret Service protection, such as has been directed by the President of the United States to be provided, for the protection of Governor Wallace and all other candidates for the presidency.” Eespondents have also served an answer to the petition.
In support of the motion to dismiss, respondents contend that “ Mandamus will not lie to compel the Park Commissioner to execute a lease of Shea Stadium for a specified date because the Park Commissioner has absolute discretion to decide whether Shea Stadium is to be utilized as a forum for partisan political activity ” and he has promulgated the policy that no such activity shall be permitted within its confines. Eespondents further contend that their action does not constitute an unconstitutional abridgement of petitioners ’ rights of free speech and assembly and, in support of this contention, the Assistant Corporation Counsel, who appeared on behalf of respondents, stated that he was authorized to offer to petitioners the use of another *948 city-owned stadium, i.e., Downing Memorial Stadium located on Randall’s Island.
In opposition to the motion to dismiss and in support of their motion for judgment, petitioners contend that (1) the action of respondents in refusing the requested rental is arbitrary and capricious as a matter of law and (2) the action complained of constitutes a prior restraint on speech and on the rights of free assembly in violation of both the Federal and State Constitutions.
The motion to dismiss the petition is denied and judgment is granted to petitioners to the extent indicated below, for the following reasons:
It is beyond dispute that a citizen does not have the right to use public property under a municipality’s control at his will or on his own terms. Nor does a citizen have a constitutional or inalienable right to use the municipal facility irrespective of the municipality’s right to regulate such facility for the best interests of the public.
In the instant case, the prescribed uses and the respondents’ area of regulation are spelled out and delineated in subdivision a of section 532-15.0 of the Administrative Code of the City of New York, entitled “Renting of stadium in Flushing Meadow Park; exemption from down payment requirements ” provides: “ Notwithstanding any other provision of law, general, special or local, the city, acting by the commissioner, with the approval of the board of estimate, is hereby authorized and empowered from time to time to enter into contracts, leases or rental agreements with, or grant licenses, permits, concessions or other authorizations to, any person or persons, upon such terms and conditions, for such consideration, and for such term of duration as may be agreed upon by the city and such person or persons, whereby such person or persons are granted the right, for any purpose or purposes referred to in subdivision b of this section ”.
Subdivision b provides, inter alia: “ Any contract, lease, rental agreement, license, permit, concession or other authorization referred to in subdivision a of this section may grant to the person or persons contracting with the city thereunder, the right to use, occupy or carry on activities in, the whole or any part of such stadium, grounds, parking areas and other facilities, (1) for any purpose or purposes which is of such a nature as to furnish to, or foster or promote among, or provide for the benefit of, the people of the city, recreation, entertainment, amusement, education, enlightenment, cultural development or betterment, and improvement of trade and commerce, including professional, amateur and scholastic sports and athletic events, theatrical, *949 musical or other entertainment presentations, and meetings, assemblages, conventions and exhibitions for any purpose, including meetings, assemblages, conventions and exhibitions held for business or trade purposes, and other events of civic, community and, general public interest. * * 0 It is hereby declared that all of the purposes referred to in this subdivision b are for the benefit of the people of the city and for the improvement of their health, welfare, recreation and prosperity, for the promotion of competitive sports for youth and the prevention of juvenile delinquency, and for the improvement of trade- and commerce, and are hereby declared to be public purposes.” (Emphasis supplied.)
Respondents contend that the rental of the stadium rests In the sole, unfettered, unreviewable discretion of the Commissioner of Parks and therefore the Commissioner acted within his powers when he established that it was his policy to exclude partisan political rallies from the stadium.
This court does not agree. Section 532-15.0 specifically sets forth certain permitted and authorized uses and establishes the standard to guide the Commissioner in the exercise of his discretion. He must act in accordance with that standard and it is beyond dispute that if his actions are unreasonable, arbitrary and capricious, the court has power to set them aside. As stated in Matter of Ormsby v. Bell (218 N. Y. 212, 216): "A1 mandamus will not lie to compel the performance of a power the exercise of which lies in the discretion of the officer against whom the writ is sought/ unless the action of the officer is capricious, arbitrary or unreasonable. (People ex rel. Empire City Trotting Club v. State Racing Comn., 190 N. Y. 31, 33.) ” Similarly, in Matter of Hooker v. Conte (208 Misc. 188,191), the court stated: a In determining whether or not the petitioner has a case for any relief, it is, first of all, to be borne in mind that the court will not interfere with administrative discretion legally exercised. A court may not review and countermand the action of a public board or officer in a matter involving the exercise of judgment or discretion, that is, provided the board or officer, proceeded honestly in accordance with the law and did not act arbitrarily. (Matter of Larkin Co. v. Schwab, 242 N. Y. 330; Matter of Ormsby v. Bell, 218 N. Y. 212, 216; People ex rel. Peixotto v. Board of Educ., 212 N. Y. 463, 466; Matter of Stanton v. Board of Educ., 190 Misc. 1012, 1016.) ”
In excluding partisan political activity, the Commissioner has not acted in conformance with the standard promulgated to guide his discretion. There are few events, if any at all, that suggest themselves to the court’s mind that can be truly charac *950 terized as being of greater ‘ ‘ civic, community and general public interest” than the appearance of a major candidate and contender for the office of the presidency of the United States and his purpose of delivering a campaign address.
Of course, the proposed use herein in a strict sense can properly be described as a partisan political activity or rally. However, in the court’s judgment it cannot blithely be equated with the generalization of “ partisan political activity,” which latter use the Commissioner’s alleged policy has banned in Shea Stadium.
Whether certain matters, issues and events are of ‘ ‘ civic, community and general public interest ” depends in great part on their timeliness. I am of the opinion that a gathering of 50,000 persons, assembled to hear a major presidential candidate, is an event of far deeper significance and meaningfulness than a mere partisan political rally or activity. Indeed, such an assemblage may be more accurately characterized as an assemblage or event of ‘ ‘ civic, community and general public interest.” Especially is this so in the critical and crucial times such as the present ones in our city, State and Nation — and indeed throughout this dangerous world where our national interests and the lives of our citizens are at stake and hang in the balance almost every minute of every hour of every day. With our Nation’s very survival at stake under the gun of the ever-presence of nuclear weaponry, this court cannot conceive of any single event that is of greater public interest than one which affords the citizenry the opportunity to hear and scrutinize the stated policies, philosophy and pronouncements of a major candidate — in fact to hear that candidate tell ‘ ‘ why George Wallace?” as against “ why Richard Nixon?” or “ why Hubert Humphrey?” — four weeks before the presidential election.
Whether one agrees or disagrees with the candidate’s views, it is inescapable that those views on the vital issues of our day — fiscal responsibility, crime, law and order, Vietnam, constitutional government, the United States Supreme Court, colleges and campuses, and others — are certainly of civic, community and general public interest. To deny a major presidential candidate the use of this publicly-owned facility under these circumstances is in effect and in fact a denial to the public of its rightful opportunity to enjoy and participate in an activity and event specifically authorized by the statute.
The court assumes that the rule excluding political activity from the stadium was not directed specifically against Governor Wallace. However, in the light of the statutory language which must guide the Commissioner’s discretion, this rule or policy is *951 patently unreasonable. Respondents have not proffered one single argument to support the classification excluding political activity which. they have created. Accordingly, the ground stated by the Commissioner to justify his denial of the use of the stadium is improper and since respondents have no other stated objection to petitioners’ use of the stadium they are directed to rent the stadium to the petitioners on reasonable terms. (Matter of Policemen’s Benevolent Assn. of Westchester County v. Board of Trustees, 21 A D 2d 693.)
Although the court is reminded of the words of Blackstone spoken more than two hundred years ago, “ Every free man has an undoubted right to lay before the public what sentiments he pleases ”, under the circumstances herein since this decision is predicated on the Commissioner’s improper exercise of administrative discretion, it is not necessary to decide the questions of constitutional law raised by the petition. Accordingly, the matter is remanded to the Commissioner for proceedings consistent with this opinion and the respondents’ motion to dismiss is denied.